UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY F.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1851 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY,[2] | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Tracy F. is an adult who lives in the Middle District of Pennsylvania. She

seeks judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits under

Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to

42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8). After

reviewing the parties' briefs, the Commissioner's final decision, and the relevant

---

[1] We adopt the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts refer to social security plaintiffs by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly, this matter will be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND AND PROCEDURAL HISTORY

On May 28, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 22; Doc. 17-2, p. 23).  In this application, Plaintiff alleged she became disabled on June 1, 2018, when she was forty-six years old, due to the following conditions: anxiety; depression; attention deficit disorder; hemiplegic migraine; psoriatic arthritis; variant migraines; cluster headaches; complex partial seizures with consciousness impaired; IBS with constipation; and confusion. (Admin. Tr. 318; Doc. 17-6, p. 3). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Admin. Tr. 349; Doc. 17-6, p. 34). Plaintiff's conditions also affect her memory. *Id.* Plaintiff graduated high school and completed one year of college. (Admin. Tr. 319; Doc. 17-6, p. 4). Before the onset of her impairments, Plaintiff

worked as a supervisor of center services, a business trainer, and an administrative clerk. (Admin. Tr. 30; Doc. 17-2, p. 31).

On October 16, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 22; Doc. 17-2, p. 23). On July 21, 2020, Plaintiff's application was denied on reconsideration. *Id.* On September 14, 2020, Plaintiff requested an administrative hearing. *Id.*

On February 9, 2021, Plaintiff and her counsel participated in a telephone hearing before Administrative Law Judge Gwendolyn Hoover. (Admin. Tr. 64; Doc. 17-2, p. 65). During that hearing, ALJ Hoover observed that Plaintiff was "very hoarse" and expressed concern that the proceedings could not be properly recorded because it was difficult to hear Plaintiff speak. (Admin. Tr. 67-68; Doc. 17-2, pp. 68-69). Plaintiff reported she was ill and developed a cough in November that had not resolved. The hearing could not continue because Plaintiff was unable to speak loud enough for a recording to be made.

On May 14, 2021, Plaintiff and counsel participated in a second telephone hearing before Administrative Law Judge Richard E. Guida (the "ALJ"). (Admin. Tr. 22, 32; Doc. 17-2, pp. 23, 33). On May 27, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 32; Doc. 17-2, p. 33). On July 23, 2021, Plaintiff requested that the Appeals Council of the Office of Disability

Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 283; Doc. 17-4, p. 151).

On September 15, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 17-2, p. 2).

On November 21, 2022, Plaintiff filed a complaint in federal court requesting judicial review of the Commissioner's final decision. (Doc. 1). The Commissioner moved to dismiss that complaint. (Docs. 11, 12). On March 15, 2023, Plaintiff filed a motion to amend her complaint. (Doc. 13). On March 16, 2023, that motion was granted, and Plaintiff's amended complaint was filed. (Docs. 14, 15). In the amended complaint, Plaintiff alleges that the ALJ's decision denying her application is not supported by substantial evidence and is incorrect. (Doc. 15, ¶ 10). As relief, Plaintiff requests that the court award benefits, or remand this matter to the Social Security Administration for further consideration. (Doc. 15).

On March 27, 2023, the Commissioner filed an answer. (Doc. 16). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 16, ¶ 10). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 21) and the Commissioner's Brief (Doc. 23) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

## III.  LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process. We will also discuss the framework an ALJ uses to evaluate a claimant's symptoms.

### A.  SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S.

---

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

---

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act,

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers

---

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[16] 20 C.F.R. § 404.1520(a).

[17] 20 C.F.R. § 404.1520(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

## C.  STANDARDS FOR THE ALJ'S EVALUATION OF A CLAIMANT'S SYMPTOMS

When deciding whether to grant or deny an application for benefits, an ALJ is required to consider "all evidence" in the case record.[22] The record in a social security appeal will almost always contain "symptom" evidence. "Symptoms" are defined as a claimant's description of his or her physical or mental impairment.[23] Thus all the claimant's written and oral statements describing their various

---

[19] 20 C.F.R. § 404.1545(a)(2).
[20] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.
[21] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.
[22] 20 C.F.R. § 404.1520(a)(3).
[23] 20 C.F.R. § 404.1502(i).

impairments, including those recorded by medical providers during treatment, written in response to Social Security Administration questionnaires, and made under oath during an ALJ hearing, are "symptoms."

When evaluating symptoms, an ALJ must first consider whether the symptom at issue is related to a medically determinable impairment. If it is, he or she must then consider its frequency, intensity, and determine the extent to which it affects a claimant's ability to perform basic work activities. The regulations outline a two-step process that must be followed when evaluating a claimant's symptoms.

The first step requires the ALJ to consider whether the symptom is related to a medically determinable impairment. The ALJ does so by considering whether a claimant's medically determinable impairment could reasonably be expected to produce the symptom alleged.[24] For example, if a claimant "has a medically determinable impairment established by a knee x-ray showing mild degenerative changes and he or she alleges extreme pain that limits his or her ability to stand and walk, we will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain."[25] The ALJ will not, however, evaluate whether the symptom, "pain," is "extreme" or limits the

---

[24] 20 C.F.R. § 404.1529(b).
[25] SSR 16-3p, 2017 WL 5180304, at *3.

claimant's ability to walk at the first step of the symptom analysis.[26] Instead, the ALJ will move on and consider the symptom at the second step of the symptom evaluation.

The second step requires the ALJ to consider the frequency, intensity, and work limitations that a symptom causes.[27] In doing so, the ALJ considers both the objective medical evidence and other evidence relevant to the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptom; (3) conditions that bring on or intensify the symptom; (4) the type, dosage, effectiveness, and side effects of medication taken to address the symptom; (5) treatment other than medication received to relieve the symptom; and (6) any other measures used to relieve the symptom.[28] The ALJ may also consider any other factor that he or she believes is relevant to a claimant's functional limitations and restrictions due to the symptom.[29]

The ALJ will often consider whether the claimant's statements about the intensity, persistence and limiting effects of a symptom are internally consistent.[30]

---

[26] *Id.*
[27] 20 C.F.R. § 404.1529(c).
[28] *Id.*; 20 C.F.R. § 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both.").
[29] 20 C.F.R. § 404.1529(c)(3)(vii).
[30] SSR 16-3p, 2017 WL 5180304, at *9.

Where a claimant's statements about the intensity, persistence and limiting effects of a symptom are internally consistent, they are "more likely to reduce his or her capacities for work-related activity."[31] The ALJ will also compare the claimant's statements about the intensity, persistence and limiting effects of a symptom with the other evidence in the record and consider whether those statements are consistent or inconsistent with that evidence.[32] Where a claimant's symptoms about intensity, persistence and the limiting effects of a symptom are consistent with the objective medical evidence and other evidence, they are "more likely to reduce his or her capacities for work-related activity."[33] SSR 16-3p explains, however, that,

> inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.[34]

An ALJ may also consider a claimant's attempts to seek medical treatment for the symptom, and how closely they followed the treatment once it was prescribed. SSR 16-3p explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments,

---

[31] *Id.*

[32] 20 C.F.R. § 404.1529(c)(4).

[33] SSR 16-3p, 2017 WL 5180304, at *9.

[34] *Id.*

Page 13 of 30

referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."[35] However, where the frequency of treatment, extent of treatment sought, or compliance with prescribed treatment is not consistent with the degree of symptom intensity alleged, the ALJ is required to consider possible reasons for that inconsistency before relying on it.[36]

When evaluating a symptom, and a claimant's statements about the intensity, persistence, and effect that symptom has on his or her ability to work, the ALJ is required to articulate the basis for his or her conclusions. SSR 16-3p explains,

> it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.[37]

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at *10.

## IV.    DISCUSSION

Plaintiff raises the following issues in her statement of errors:[38]

(1)    "Did the ALJ err in finding that [Plaintiff] had the residual functional capacity ("RFC") to perform light work?" (Doc. 21, p. 3).

(2)    "Did the ALJ ignore or otherwise fail to cite to substantial evidence of record to discount the impact of [Plaintiff's] hemiplegic headaches and IBS on her ability to perform SGA level work?" *Id.*

(3)    "Did the ALJ erroneously mischaracterize and/or inaccurately summarize [Plaintiff's] hearing testimony regarding her activities of daily living to 'suggest' an ability to perform SGA level work?" *Id.*

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in his decision.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2019. (Admin. Tr. 24; Doc. 17-2, p. 25). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 10, 2018 (Plaintiff's alleged onset date) and December 31, 2019 (Plaintiff's date last insured) ("the relevant period"). *Id.*

---

[38] In his response, the Commissioner construed Plaintiff's brief as raising six, rather than three, arguments.

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: asthma, degenerative disc disease, irritable bowel syndrome, migraine headaches, psoriatic arthritis, seizures, obesity, attention-deficit hyperactivity disorder, depressive disorder, and generalized anxiety disorder. (Admin. Tr. 24; Doc. 17-2, p. 25). No medically determinable non-severe, or non-medically determinable impairments were identified.

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 24-25; Doc. 17-2, pp. 25-26).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> she is limited to standing and walking for four hours; frequent stooping, kneeling, crouching, and crawling; occasional climbing ramps and stairs, and balancing; and never climbing ladders, ropes, or scaffolds. She also must avoid concentrated exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation; and must avoid even moderate exposure to dangerous machinery and unprotected heights. She also is limited to simple and routine tasks, involving only simple, work-related decisions with few, if any, work place changes and no production pace work.

(Admin. Tr. 27; Doc. 17-2, p. 28).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 30; Doc. 17-2, p. 31).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 30-31; Doc. 17-2, pp. 31-32). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: small products assembler, DOT #729.687-010; electrical accessories assembler, DOT #729.687-010; and conveyor line bakery worker, DOT #524.687-022. *Id.*

### B. WHETHER THE ALJ ADEQUATELY EVALUATED PLAINTIFF'S HEMIPLEGIC MIGRAINES

The ALJ found at step two, Plaintiff had a medically determinable severe impairment of migraine headaches.[39] Plaintiff is under a neurologist's care, is prescribed a combination of oral medications, and receives regular Botox injections for her migraine headaches. An examination record suggests that, despite treatment,

---

[39] Plaintiff's records suggest she experiences both headaches and hemiplegic migraines. The latter, which are characterized by distinct neurologic symptoms, may have been diagnosed in early 2018. (Admin. Tr. 588; Doc. 17-7, p. 135) (stating that the rheumatologist was hesitant to try a biologic until Plaintiff's neurologic issues could be diagnosed and noting that the differential was "migraine with hemiplegia versus seizure versus TIA versus other.").

her migraines remain "uncontrolled."[40] Plaintiff testified that her hemiplegic migraines are very severe, and that the symptoms mimic a stroke.[41] She testified that she experiences hemiplegic migraines between three and five times per month, each migraine lasts approximately forty-eight hours, and that she is unable to function during a migraine.[42]

Plaintiff argues that the ALJ failed to cite substantial evidence of record to discount the impact of Plaintiff's hemiplegic migraines. (Doc. 21, p. 6). We construe Plaintiff's brief as arguing that substantial evidence does not support the ALJ's conclusion that Plaintiff's statements about the frequency, intensity, and limiting effects of her hemiplegic migraine symptoms were inconsistent with the record.[43]

In response, the Commissioner argues that:

> a claimant's allegations alone never establish that she is disabled. See 20 C.F.R. § 404.1529. Here, the ALJ considered Plaintiff's migraine headaches, but noted Plaintiff received Botox injections for her

---

[40] (Admin. Tr. 609; Doc. 17-7, p. 156) (noting on May 8, 2019 that Plaintiff's migraines were "uncontrolled currently despite use of Topamax 150 mg daily, propranolol 60 mg BID, and divalproate 250 mg BID as well as long term BTX").

[41] (Admin. Tr. 41-42; Doc. 17-2, pp. 42-43).

[42] *Id.*

[43] We find it helpful when the parties support their arguments by specific reference to: (1) the portion of the record relied upon; (2) relevant statutes and regulations; and (3) relevant caselaw. *See* L.R. 83.40.4(c) (requiring that each contention in a Plaintiff's brief be "supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting plaintiff's position."). The failure to cite to such authority may result in a plaintiff's arguments being deemed waived.

migraines (Tr. 608, 611-13, 796, 843), which she previously reported helped (Tr. 617).

(Doc. 23, p. 16). We construe the Commissioner's brief as responding that substantial evidence supports the ALJ's conclusion that Plaintiff's statements about the frequency, intensity, and limiting effects of her hemiplegic migraines are inconsistent with the record.[44]

At the first step of his symptom analysis, the ALJ found that all of Plaintiff's symptoms could reasonably be expected to result from one of Plaintiff's medically determinable impairments. (Admin. Tr. 28; Doc. 17-2, p. 29).

At the second step of his symptom analysis, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the record. He offered a one-sentence explanation

---

[44] The Commissioner also suggests that the ALJ's decision to omit the attendance limitation is supported by prior administrative medical findings made by medical consultants during the initial and reconsideration stages of the Administration's review. *Id.* The ALJ did not, however, cite to the prior administrative medical findings as a basis to discount any of Plaintiff's statements about her migraine symptoms, and did not discuss the migraine symptoms or attendance limitation when he evaluated their findings. (Admin. Tr. 30; Doc. 17-2, p. 31). Thus, the Commissioner's argument that substantial evidence supports the ALJ's rejection Plaintiff's statements about her the frequency, intensity, and limiting effects of her migraine symptoms because they are inconsistent with these findings is an improper post-hoc rationalization which will not be accepted by the Court. *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (finding that an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.").

identifying these three reasons to justify his conclusion: (1) they were inconsistent with the "limited" level of treatment received; (2) the statements are not consistent with diagnostic studies; and (3) the statements are not consistent with examinations. (Admin. Tr. 28; Doc. 17-2, p. 29). Then, he wrote a half-page discussion of Plaintiff's treatment for various impairments, discussed the results of diagnostic studies performed to evaluate Plaintiff's irritable bowel syndrome and asthma, and a summary of a few treatment records relating to various impairments. *Id.*

"When an ALJ accepts that a claimant suffers from migraines but concludes that she is not disabled, there are generally two possible explanations. Either the ALJ found that the claimant did not suffer migraines at a disabling frequency, or the migraines were not of a disabling severity (*i.e.*, the ALJ found that the claimant could work while suffering a migraine)."[45] Here, the ALJ accepted that Plaintiff suffers from migraines, but found that she is not disabled. It appears that he found that Plaintiff did not suffer migraines as frequently as she alleges, and that her hemiplegic migraine symptoms were not as severe as she alleges. We agree with Plaintiff,

---

[45] *Michelle L. M. v. Kijakazi*, No. 2:22-CV-00151-MKK-JMS, 2023 WL 3835583, at *9 (S.D. Ind. June 6, 2023) (quoting *Gould v. Kijakazi*, No. 21-CV-308, 2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022) and citing *Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *2 (E.D. Wis. Jan. 6, 2020)) ("Thus, to assess whether a claimant's migraines preclude substantial gainful activity, it is necessary to assess both how often the claimant suffers migraines and how severe those migraines are.").

however, that substantial evidence does not support the ALJ's reasons for that conclusion because: (1) the ALJ did not adequately explain how Plaintiff's treatment was inconsistent with her statements about her symptoms; (2) the ALJ did not cite to any relevant or probative diagnostic study to support his conclusion that Plaintiff's statements about her migraine symptoms were inconsistent with the objective diagnostic studies of record; (3) the ALJ did not explain why Plaintiff's examination records were inconsistent with her reports that she experienced between three and five hemiplegic migraines each month; and (4) the ALJ did not adequately support his conclusion that Plaintiff's statements about the intensity of her symptoms were inconsistent with her examination records.

First, the ALJ found that Plaintiff's statements about the frequency, intensity, and limiting effects of her hemiplegic migraines were inconsistent with the record because she received a "limited level of treatment" for her migraines. (Admin. Tr. 28; Doc. 17-2, p. 29) (explaining Plaintiff "underwent prescription medication and Botox injections for her migraine headaches . . ., and indicated that the Botox injections helped her migraine symptoms.").

ALJs may consider the nature of a claimant's treatment to determine whether or how much a symptom affects their ability to work.[46] Allegations of severe

---

[46] SSR 16-3p, 2017 WL 5180304, at *9.

symptoms are less credible if a claimant does not pursue treatment, if the extent of

treatment sought is not comparable with the degree of symptom intensity alleged, or

where he or she fails to follow prescribed treatment.[47] They may also be found less

credible if there is evidence treatment effectively alleviates, or significantly reduces,

the symptoms. An ALJ's evaluation of the nature or aggressiveness of a treatment

regimen should take into account the condition being treated.[48]

Here, Plaintiff pursues regular treatment with a neurologist. She is prescribed

three different medications which she takes daily. She also receives Botox injections

from her neurologist every three months.[49] This type of treatment for migraine

---

[47] *Id.*

[48] *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated).

[49] Plaintiff sought care for her hemiplegic and non- hemiplegic migraines from a neurologist at least six times during the nineteen-month relevant period. (Admin. Tr. 608-14; Doc. 17-7, pp. 155-161). These records suggest that Plaintiff received thirty-one Botox injections into her "bilateral forehead, temples, occiput, and upper shoulders," on five separate occasions during the relevant period. (Admin. Tr. 608-14; Doc. 17-7, pp. 155-161). Only one record written during the relevant period, from a visit where no Botox was administered, includes a discussion of her condition. During this examination, Plaintiff's neurologist assessed her current medication regimen, which included propranolol (60 mg BID), valproate (250 mg BID), Topamax (150 mg daily), and the Botox injections (identified as a "long term" treatment). (Admin. Tr. 609; Doc. 17-7, p. 156). He recommended tapering off valproate and adding Aimovig. *Id.* During the examination Plaintiff was given an injection of Toradol (ketorolac, an NSAID) and Methylprednisolone (a

headaches is not viewed as "conservative."[50]   Moreover, the ALJ does not cite to

any evidence that suggests Plaintiff was noncompliant with this treatment, that this

course of treatment was not comparable to the degree of limitation alleged, or that

more aggressive treatment was recommended or appropriate. The ALJ also did not

fully discuss Plaintiff's response to treatment. Although he acknowledged that the

Botox "helped" he did not discuss that Plaintiff's migraine symptoms remain

uncontrolled despite non-conservative treatment. Therefore, substantial evidence

does not support the ALJ's conclusion that Plaintiff's statements about the intensity,

---

corticosteroid) in her left buttocks. (Admin. Tr. 609; Doc. 17-7, p. 156). Under "history of present illness," the neurologist wrote:

> A 46 yo female here for fu for migraines-uncontrolled currently despite use of Topamax 150 mg daily, propranolol 60 mg BID, and divalproate 250 mg BID as well as long term BTX
> HAs are right sided throbbing worse with light and sound. Now occurring more than 10 times per month. Also she has hemiplegic migraines that affect her right side – this occurs at least 4 times per month and she is currently having one such episode at this visit.
> Unable to use triptan therapy gioven [sic] hemiplegic hx
> Also of note she indicates she has periods of [Loss of Consciousness] with severe migraines – gets warning [symptoms] of feeling hot and tinging [sic]

(Admin. Tr. 609; Doc. 17-7, p. 156).

[50] *Jennifer L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-01591-JR, 2024 WL 3899470, at *3 (D. Or. Aug. 22, 2024); *Tracey F. v. Kijakazi*, No. 5:20-CV-00099, 2022 WL 3009458 (W.D. Va. July 28, 2022); *Chelsie E. v. Kijakazi*, No. 1:23-CV-00455-RLY-KMB, 2023 WL 8731964 (S.D. Ind. Dec. 19, 2023), *report and recommendation adopted*, No. 1:23-CV-00455-RLY-KMB, 2024 WL 37093 (S.D. Ind. Jan. 3, 2024)

persistence, and limiting effects of her migraine symptoms are inconsistent with her course of treatment.

Second, the ALJ found that Plaintiff's statements about the frequency, intensity and limiting effects of her migraine symptoms were not consistent with objective diagnostic studies.

"Objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms."[51] Not all symptoms, however, can be "measured objectively through clinical or laboratory diagnostic techniques."[52] Another court recently observed that migraine symptoms, their frequency, and their intensity cannot be measured through objective diagnostic studies, and explained,

> Migraines represent a particularly challenging impairment that regularly arises in disability claims. *See Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *2, (E.D. Wis. Jan. 6, 2020). "The impairment itself is not objectively verifiable, much less the frequency and severity of the resulting symptoms." *Id.*; *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("Doctors use MRIs *to rule out other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis.") (emphasis in original); SSR 19-4p, § 2. "Thus, determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment. *Gould v. Kijakazi*, No. 21-CV-308,

---

[51] SSR 16-3p, 2017 WL 5180304, at *5.

[52] *Id.*

2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022) (citing *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020)).[53]

Moreover, the ALJ is required to "clearly articulate" "specific reasons" for the weight given to a claimant's statements about the intensity, severity, and limiting effects of her symptoms.[54]

The ALJ does not identify what objective study is inconsistent with Plaintiff's statements about the frequency, intensity, and limiting effects of her migraine headaches. His rationale is insufficient to permit review. Therefore, substantial evidence does not support the ALJ's second reason for discounting Plaintiff's statements about the intensity, persistence, and limiting effects of her migraine symptoms.

Third, the ALJ found that Plaintiff's statements about the intensity, frequency, and limiting effects of her migraine symptoms are not consistent with examination records.

Important information about a claimant's symptoms may be recorded by medical sources in their examination records, such as descriptions of the character

---

[53] *Michelle L. M. v. Kijakazi*, No. 2:22-CV-00151-MKK-JMS, 2023 WL 3835583, at *6, 8 (S.D. Ind. June 6, 2023) (finding that an ALJ's analysis that a claimant's migraine symptoms were not corroborated by objective medical imaging was not supported by substantial evidence).

[54] SSR 16-3p, 2017 WL 5180304, at *10.

of symptoms, and information about their frequency and duration.[55] An ALJ may compare this information to other statements in the case record.[56] Where statements are inconsistent, an ALJ will determine that the symptoms are "less likely" to reduce his or her capacity to work.[57] When an ALJ concludes a claimant's statement about the frequency, intensity, or limiting effects of a symptom is not consistent with objective or other evidence he is required to articulate specific reasons explaining why, and substantial evidence must support those reasons.[58]

Here, the ALJ relies on examination records to disregard Plaintiff's statements about the frequency of her migraine headaches. Generally, the presence of migraine symptoms during an examination, however, does not reveal much about the frequency or intensity of a claimant's symptoms.[59] The ALJ did not explain how or why the examination records were inconsistent with Plaintiff's testimony about the frequency of her migraine symptoms. Therefore, the ALJ's conclusion that

---

[55] SSR 16-3p, 2017 WL 5180304, at *6-7.

[56] *Id.*

[57] *Id.* at *8.

[58] SSR 16-3p, 2017 WL 5180304, at *10.

[59] *Michelle L. M.*, 2023 WL 3835583, at *8 ("Even if Plaintiff had none of her migraine symptoms during her medical exams, this may only suggest that she did not have a migraine at the time of the appointment, rather than revealing anything about the frequency or severity of her migraine symptoms.").

Plaintiff's statements about the frequency of her migraines are inconsistent with examination records is insufficient to permit review.

Although the ALJ did discuss some examination records about the intensity of Plaintiff's migraine symptoms in his analysis, the records he cited do not support his conclusion that Plaintiff's migraine symptoms are not severe enough to cause her to miss work during a migraine. (Admin. Tr. 28; Doc. 17-2, p. 29) (citing to a 2018 record documenting that Plaintiff injured her wrist when she fell during a migraine-related seizure, and a September 2018 record documenting that Plaintiff went to the emergency room because her hemiplegic migraine symptoms mimicked a stroke). The record also includes clinical observations by a treating rheumatologist who observed the right-sided paralysis and facial drooping caused by Plaintiff's hemiplegic migraines.[60] Therefore, substantial evidence does not support the ALJ's

---

[60] In September 2019, Plaintiff's rheumatologist noted that Plaintiff presented with:

> Active signs and symptoms today of right sided hemiplegia arm and leg, left-sided facial weakness including the eyelid, and tongue deviation right. Spoke with Dr. Bossert on the phone her neurologist, he states if the facial symptoms are new she should go to the emergency room, the right-sided weakness is typical of her migraines, she has been evaluated multiple times in the ER in the past. Asked the patient multiple times about the symptoms regarding the face and tongue, she states these are old but does understand if there is a new or changing symptoms she needs to go to the ER immediately. She is noting some fatigue today also. She does not currently have a headache. She is

conclusion that Plaintiff's statements about the intensity and limiting effects of her migraines are inconsistent with examination records.

Although the ALJ articulated three reasons why Plaintiff's statements about her migraine symptoms were inconsistent with the record, his stated reasons were either not supported by the record or not well-explained enough to permit review. Therefore, substantial evidence does not support the ALJ's symptom analysis.

In another argument, Plaintiff asserts that if her statements about the frequency, duration, and intensity of her hemiplegic migraine symptoms are fully credited and accounted for in the RFC assessment, she will be found disabled. In Plaintiff's view, her hemiplegic migraines would result in her missing work between six and ten days per month. The vocational expert testified during Plaintiff's administrative hearing that an individual absent due to illness more than twelve times per year, or one day per month, would be unemployable. (Admin. Tr. 59-60; Doc. 17-2, p. 60-61). Thus, Plaintiff is correct that, if her statements are fully credited, the result in this case could be different. Therefore, we find that the ALJ's error is harmful.

---

getting Botox for her migraines Aimovig was not approved by her insurance.
(Admin. Tr. 796; Doc. 17-7, p. 343).

In her complaint, Plaintiff alleges that this error can be remedied in one of two ways: (1) the Court can order Defendant to award benefits retroactive to June 1, 2018; or (2) remand this matter back to the Social Security Administration for further consideration. (Doc. 15, p. 4). This Court has the authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing."[61] However, benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."[62] Plaintiff does not argue this standard has been met. Therefore, we find that remand for further proceedings is the appropriate remedy in this case.

## C.    PLAINTIFF'S REMAINING ARGUMENTS

In her remaining arguments, Plaintiff challenges other aspects of the ALJ's symptom analysis, disputes the ALJ's characterization of the prior administrative medical findings by state agency medical consultants, and argues that both these errors resulted in an inaccurate RFC assessment. Having concluded for the above-stated reasons that remand is appropriate, and because remand may produce different results on these claims, discussion of Plaintiff's remaining arguments is not

---

[61] 42 U.S.C. § 405(g).

[62] *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citing *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984)).

necessary. Plaintiff is, however, free to raise these issues during the proceedings on remand.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, this case will be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order will be issued.

Date: October 28, 2024                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge